**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

SAMANTHA STEVINS,

     Plaintiff,                          Case No.

v.

U.S. BANK NATIONAL ASSOCIATION,
As Trustee Successor In Interest to Bank of
America, National Association, As Trustee
Successor by Merger to LaSalle Bank National
Association, As Trustee for Merrill Lynch
Mortgage Investors Trust, Mortgage Loan Asset-
Backed Certificates, Series 2006-MLN1; and
JAMES E. ALBERTELLI, P.A. d/b/a Albertelli
Law; and NATIONSTAR MORTGAGE, LLC
d/b/a Mr. Cooper.

     Defendants.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW SAMANTHA STEVINS (hereinafter "Stevins" or "Plaintiff"), by and

through undersigned counsel, complaining as to the conduct of U.S. BANK NATIONAL

ASSOCIATION, As Trustee Successor In Interest to Bank of America, National Association, As

Trustee Successor by Merger to LaSalle Bank National Association, As Trustee for Merrill Lynch

Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-MLN1

(hereinafter "US Bank"); and JAMES E. ALBERTELLI, P.A. d/b/a Albertelli Law (hereinafter

"Albertelli"); and  NATIONSTAR MORTGAGE, LLC d/b/a Mr. Cooper (hereinafter "Mr.

Cooper") (collectively referred to as "Defendants"), as follows:

**NATURE OF THE ACTION**

1.  Plaintiff brings this action for damages pursuant to the Fair Debt Collection Practices Act

1

("FDCPA") under 15 U.S.C. §1692 *et seq.*, and the Florida Consumer Collection Practices Act ("FCCPA") pursuant to Florida Statutes §559.55 and §559.72, for Defendants' unlawful conduct.

JURISDICTION AND VENUE

2.   This action arises under and is brought pursuant to the FDCPA.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1692, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. §1367.

3.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the Middle District of Florida with the a substantial portion of the events that give rise to this action having occurred within the Middle District of Florida.

PARTIES

4.   Plaintiff, SAMANTHA STEVINS, is a consumer over 18 years-of-age residing in Collier County, Florida, which is within the Middle District of Florida.

5.   Defendant U.S. BANK NATIONAL ASSOCIATION, As Trustee Successor In Interest to Bank of America, National Association, As Trustee Successor by Merger to LaSalle Bank National Association, As Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-MLN1 is a debt collector pursuant to FCCPA and a company organized under the laws of the State of Minnesota. Defendant's principal place of business is located at 800 Nicollet Mall, Minneapolis, MN 55402.

6.   Defendant US Bank acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

7.   Defendant, JAMES E. ALBERTELLI, P.A. d/b/a Albertelli Law is a debt collector

2

pursuant to both the FDCPA and FCCPA and a company organized under the laws of the State of Florida. Defendant's principal place of business is located at 208 N. Laura Street, Suite 900, Jacksonville, Florida 32202.

8.   Defendant Albertelli acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

9.   Defendant, NATIONSTAR MORTGAGE, LLC d/b/a/ Mr. Cooper is a debt collector pursuant to both the FDCPA and FCCPA and a company organized under the laws of the State of Texas. Defendant's principal place of business is located at 8950 Cypress Wates Blvd, Dallas, Texas 75019.

10. Defendant Mr. Cooper acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**FACTS SUPPORTING CAUSES OF ACTION**

11.   The instant action stems from Defendants' attempts to collect upon a defaulted mortgage ("subject consumer debt") that was purportedly owed to U.S. Bank.

12.   On July 17, 2009, Defendant US Bank, filed a Mortgage Foreclosure action in the Circuit Court for Collier County, Florida under a case style of U.S. Bank National Association, As Successor Trustee to Bank of America, National Association, As Successor by Merger to Lasalle Bank, N.A., As Trustee for the MLMI Trust Series 2006-MLN1, Plaintiff vs. Samantha Stevins, et al, Defendants. Case Number 09-CA-6299 (hereinafter referred to as "First Foreclosure") that provided in ¶5 "FDCPA: Plaintiff hereby provides Defendant(s) with verification notice as required under the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C.A. 1692.  If the

Defendant(s) request verification of the debt, Plaintiff shall suspend its efforts to collect the debt until Plaintiff mails the requested information to the Defendant(s) requesting the verification. A Copy of the notice is attached hereto as Plaintiff's Exhibit 'A'." (True and correct copies of the first 2 pages of the 2009 foreclosure complaint and the previously-attached FDCPA Notice are incorporated into this action as Exhibit A.)

13.  In the First Foreclosure, US Bank alleged that Stevins owned the property, but that the original note was lost and not in their custody or control at the time the litigation was commenced.

14.  Count I of the First Foreclosure sought to reestablish a promissory note in accordance with Florida Statutes 673.3091.

15.  According to the First Foreclosure, on or about June 1, 2006, Stevins executed a promissory note in the principal amount of $185,000.00 to Mortgage Electronic Registration Systems, Inc. as nominee for Mortgage Lenders Network USA, Inc., that was recorded in Official Records Book 4052 Page 2156 of the Public Records of Collier County, Florida and which mortgaged the property.  The property was then owned by and in possession of the mortgagor.

16.  The First Foreclosure also sought to foreclose a mortgage on real property located in Collier County, Florida with a Parcel ID Number of 49660106842 and an address of 1862 Morning Sun Lane, Naples, Florida 34119.

17.  According to the First Foreclosure complaint, US Bank alleged that the note was accelerated and it was owed $180,821.06 due as principal on the note and mortgage, interest from March 1, 2009, costs, advances and expenses as provided in the note and mortgage and contained a demand for recovery of attorney's fees pursuant to the terms of the note and mortgage.

18.  However, in stark contrast to the amount claimed in the First Foreclosure Complaint, the FDCPA Notice alleged that the accelerated amount owed by Stevins was $191,228.80 "as of the

date of the verification" and further stated that because of "interest, late charges, attorneys' fees and other charges that may vary from day to day, the amount due on the day you pay may be greater"

19.   Stevins states that the attempt by Defendants to collect an increased amount of $10,407.74 (the difference between the face amount of the accelerated debt in the First Foreclosure Complaint of $180,821.06 and the increased amount in the FDCPA notice attached to the complaint of $191,228.80) constitutes just one example of how Defendants violated the FDCPA or FCCPA because this increased amount was not due and owing under the Note.

20.   Litigation in the First Foreclosure ended on the eve of trial on November 21, 2014 with US Bank voluntarily dismissing the litigation after 5 years of the case being open in the State courts and cancelling the Notice of Lis Pendens.

21.   A settlement was reached between the parties in the First Foreclosure on the same date the case was closed and, as a result of the November 21, 2014 settlement agreement, the State Court canceled the upcoming trial.  A true and correct copy of the 2-page Confidential Settlement Agreement (hereinafter referred to as "CSA") filed in the First Foreclosure is attached hereto as Exhibit B.

22.   Stevins asserts that the CSA was a general release binding upon all parties that prohibited Defendants from pursing any further litigation over the mortgage and note associated with her property.

23.   Paragraph 1 of the CSA states, "This Stipulation is meant to be absolute."

24.   The language contained in ¶3 of the CSA states, "the Parties, now desire to fully compromise, finally settle, and *fully release all claims, disputes and differences related to the Dispute.*" [Emph. Added]

25.   To prevent attorney's fees from being collected by Stevins in the First Foreclosure as the prevailing party, ¶4 of the CSA states, "[  ] this agreement reflects a compromise and settlement of the Parties' claims without concession of fault on the part of either party or concession by either party of the validity of any of the settled claims, neither party shall be deemed to have been a prevailing party."

26.   The CSA was entered into in the State of Florida and, if either party sought to enforce "any rights, remedies or obligations provided for in this Agreement" the CSA stated that Florida State laws would apply.

27.   Stevins is asserting her right to enforce the CSA pursuant to ¶7. ii. Which permits disclosure or publication of the terms, conditions and covenants referred to in the agreement "As may be reasonably necessary to conduct any litigation arising out of or concerning this Agreement."

28.   ¶7. iii. of the CSA permitted US Bank to disclose the agreement as follows: "In the case of Plaintiff, Nationstar LLC, to the client for whom it services the Mortgage, to its accounting, tax and legal advisors, to its corporate parents, to any state or federal regulatory agency, and to any rating agency."

29.   Paragraph 8 of the CSA clearly and unequivocally states that the agreement "shall be effective as a full and final accord and satisfaction and release of each matter in connection with those matters set forth herein above."

30.   ¶13 of the CSA states "This agreement shall inure to the benefit of and be binding upon all parties hereto and their respective successors and assigns.  This agreement has been fully negotiated and reviewed by the parties and their counsel, if any, and accordingly shall not be more strictly construed against any one party."

31. After the First Foreclosure case resolved, but before the Second Foreclosure, Stevins received several letters from Defendant Nationstar seeking to collect inexplicably inconsistent amounts for payments due towards the mortgage on her property including, but not limited to:

a. April 13, 2017 statement from Defendant Nationstar with a face amount due of $157,576.27 that included $6,241.00 in "Legal Fees" and an "Interest Bearing Principal Balance" of $180,821.06.  (Attached as Exhibit C)

b. May 15, 2017 statement from Defendant Nationstar with a face amount due of $159,278.33 that included the same "Legal Fees" of $6,241.00 from the previous statement. (Attached as Exhibit D)

c. August 15, 2017 statement from Defendant Nationstar with a face amount due of $163,926.03 that added a "Property Inspection" fee of $45.00 and "Legal Fees" of $290.00 seeking a total amount of fees of $7,611.00" (Attached as Exhibit E.)

d. Two days later, on August 18, 2017, Nationstar sent a letter seeking a "past due" amount from 02/01/2013 in the amount of $91,440.43  (Attached as Exhibit F.).

e. September 13, 2017 statement from Defendant Mr. Cooper with a face amount due of $86,877.43, a changed interest rate, and principal mortgage amount of $172,844.70, "Legal Fees" of $7,566.00 with an 8/11/2017 principal adjustment of -$7,976.36. (Attached as Exhibit G).

32. Any attorney's fees sought after the date of November 21, 2014 by Defendant Nationstar constituted debts that were either not legitimate debts or discharged by the settlement agreement between the parties entered in the First Foreclosure.

33. Additionally, each of the varying amounts sought to be collected by Defendant Nationstar d/b/a Mr. Cooper after the First Foreclosure were either not legitimate debts or were discharged

by the settlement agreement of November 21, 2014.

34.   In 2020, Mr. Cooper provided a letter stating that their records indicated that the "debt associated with the above-referenced property was subject of a bankruptcy proceeding and discharged by order of the Court." (A true and correct copy of this letter is attached hereto as Exhibit H.)

35.   By letter dated 09/27/2020, Mr. Cooper called any payments towards the mortgage and note "voluntary mortgage payments." (This letter is attached as Exhibit I.)

36.   Backtracking in time to the next State court action, on August 3, 2018, US Bank, through Defendant Albertelli, filed a second foreclosure action in State Court in the Circuit Court for Collier County, Florida under a case style of U.S. Bank National Association, As Trustee, Successor In Interest to Bank of America, National Association, As Trustee, Successor By Merger to LaSalle Bank National Association, as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-MLN1, Plaintiff v. Samantha Stevins, et.al., Defendants   Case Number 2018-CA-002341 (hereinafter referred to as "Second Foreclosure").

37.   The Second Foreclosure complaint of August 3, 2018, failed to include a notice as required by 15 U.S.C.A. 1692 of the Fair Debt Collection Practices Act.

38.   Defendant Albertelli failed to comply with the FDCPA and FCCPA by not providing the notice with the Second Foreclosure complaint of August 3, 2018 as required by 15 U.S.C.A. §1692 of the FDCPA.

39.   By pursuing the Second Foreclosure complaint of August 3, 2018, all Defendants to this action willfully disregarded the previous settlement agreement reached between the parties in the First Foreclosure.

40. The body of the Second Foreclosure complaint claimed a default date of February 1, 2013, and declared the full amount payable under the note and mortgage to be due.

41. Since the default date contained in the Second Foreclosure was secured by the First Foreclosure litigation that resolved on November 21, 2014, the amount sought to be collected by Defendants is either not a legitimate debt or was discharged by the CSA.

42. Attached to the Second Foreclosure complaint was a letter from Defendant, Nationstar with a face date of 11/07/2014 that alleged that payments have not been made on the loan "since 04/01/2009" and declaring a default amount of $116,046.76 which demanded payment of this amount by 12/07/2014. (A true and correct copy of the letter from Nationstar is attached hereto as Exhibit J.)

43. The date of default contained within the Nationstar "acceleration letter" attached as an exhibit by Defendants US Bank and Albertelli to the Second Foreclosure Complaint overlaps with the March 1, 2009 default date contained within the First Foreclosure complaint that resolved with the CSA of November 21, 2014.

44. Moreover, the 11/07/2014 Nationstar "acceleration letter" attached to the Second Foreclosure was done while litigation was pending and open in the First Foreclosure, approximately 3 weeks before the parties reached the CSA of November 21, 2014.

45. It is both factually and legally impossible to reaccelerate an already accelerated debt that was contained within active State Court foreclosure litigation.

46. The 11/07/2014 Nationstar "acceleration letter" is an attempt to collect a debt that does not exist because the debt owed was extinguished by a full and final settlement between the parties in the First Foreclosure that closed on November 21, 2014.

47. Because the Second Foreclosure complaint seeks to collect debts that were covered by the

CSA of November 21, 2014, that resolved the First Foreclosure, all of the Defendants are knowingly seeking to collect a debt that they know is not legitimate.

48.   The Second Foreclosure Complaint included an attached document entitled "Assignment of Mortgage" that was printed on 5/9/2014 that was purportedly notarized in Ventura, California on January 19, 2012.

49.   The "Assignment" contained a recording date of 3/13/2012 at 10:57 AM in the Circuit Court stating that "Mortgage Electronic Registration Systems, Inc. as Nominee for Mortgage Lenders Network USA, Inc." "for value received" . . . granted, bargained, sold, assigned, transferred and conveyed all of its "right, title and interest in" the mortgage on Stevins' property at some unknown date "prior to the Assignee [US Bank] filing a foreclosure action on July 16, 2009." (A true and correct copy is attached hereto as Exhibit K.)

50.   The Assignment of Mortgage attached to the Second Foreclosure Complaint stated that "the date of execution of this Assignment of Mortgage by Assignor is not reflective of the date the loan was transferred to the Assignee" ... and reiterates that the Assignment "is not reflective of the transfer date itself." (See Exhibit D.)

51.   Exhibit D says that "the loan was held by [US Bank] prior to the Assignee filing a foreclosure action on July 16, 2009.

52.   The Assignment of Mortgage attached to the Second Foreclosure Complaint is fraudulent for multiple reasons:

a.   The Pooling and Servicing Agreement required the loan to be transferred from the Originator (Mortgage Lendrs Network, USA) to the Sponsor (Merrill Lynch Mortgage Lending, Inc.) to the Depositor (Merrill Lunch Mortgage Investors, Inc.) to the Issuing Entity (Merrill Lynch Investors Trust, Series 2006-MLN1) via the Trustee (LaSalle Bank)

no later than September 29, 2006. The originator does not "sell or transfer" the mortgage directly to the Trust.

b.   Mortgage Lenders Network USA, Inc. was out of business as of 2/5/2007 and, as such, could not have transferred this loan to the Trust in 2012.

c.   The Pooling and Servicing Agreement also required the Note to be endorsed in blank or endorsed to the Trustee.  The subject note is endorsed to neither. At the time the loan was to be transferred to the pool in 2006, LaSalle was the Trustee, not Bank of America for US Bank.

53.   The fraudulent nature of the transfers as described above support Stevins' claim that the defendants are attempting to enforce a debt when they know that the debt is not legitimate or that no legal right to enforce the debt exists.

54.   Stevins alleges that the Note itself is not a negotiable instrument because it does not, on its face, constitute an "unconditional" promise to pay a fixed and determinable amount upon demand in accordance with the Uniform Commercial Code ("UCC") Sections 3-104(a) and 3-106(a).  This is because any express conditions contained within a note create a complete bar to negotiability.

55.   Because this provision expressly conditions the maker's obligation to repay the stated principal and interest on the lawfulness of the negotiated payment terms, it deprives the note of negotiability. In short, this language renders the obligation to pay conditional because the borrower is obligated to pay the fixed "stated amount only if the amount is consistent with applicable law." Section 3-104(a) of the UCC requires that the note state a "fixed amount of money" due in order to render it a negotiable instrument.

56.   The representations and warranties provided by the Sponsors, the Sellers and the Depositors in

typical securitized transactions involved with mortgage notes effectively do not treat residential mortgages notes as completely sold due to the continuing repurchase obligations arising out of such representations and warranties. The early payment default covenants contained within a mortgage note are simple example of such a provision. These conditions render mortgage notes non-negotiable under Section 3-302(a)(2)(iii) and (a)(2) (vi) of the UCC.

57. Presuming a real estate secured note is a non-negotiable instrument (which it is) and the originator of a given non-negotiable note opts to sell the same then UCC Article 9 applies (as it applies both to sales of secured instruments and secured transactions). In such a case the note MUST be assigned by the originator/assignor to the assignee AND the assignee MUST pay good and valuable consideration to the assignor in exchange for the assignment.

58. Thereafter, any further assignment of the non-negotiable note would require full compliance with UCC Article 9 – that is each subsequent assignee must pay good and valuable consideration to the assignor.

59. In securitized transactions the Pooling and Servicing Agreements (PSAs) constitute such an Article 9 assignment between the Depositor and Trust/Trustee and it includes conditions in addition to those set forth by Article 9 which would represent a threshold requirement in all cases.

60. For example, since the PSAs require an unbroken chain of indorsements on the note from the Originator to the Custodian for the Trust along with actual delivery of the note for each sale in the chain it follows that the notes cannot be acquired simply by the contract of assignment.

61. The drafters of the PSAs have thus imposed a sort of "hybrid Article 3" rule on how the notes must be transferred and delivered with an "unbroken chain of indorsements from the Originator to all intervening parties with the final indorsement to the Trustee for the named trust." Such additions to the Law of Assignments provided for by Article 9 are specifically allowed by Section 1-302 of

the UCC.

62. Put simply, there can be no mere HOLDER of a non-negotiable note, one is either a proper assignee or not. The requirement for good and valuable consideration is set forth in UCC Section 9-203:

(a) A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment.

(b) Except as otherwise provided in subdivisions (c) to (i),inclusive, a security interest is enforceable against the debtor and third parties with respect to the collateral only if each of the following conditions is satisfied:

(1) Value has been given.

(2) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party.

(3) One of the following conditions is met:

(A) The debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned.

(B) The collateral is not a certificated security and is in the possession of the secured party under Section 9-313 pursuant to the debtor's security agreement.

(C) The collateral is a certificated security in registered form and the security certificate has been delivered to the secured party under Section 8301 pursuant to the debtor's security agreement.

(D) The collateral is deposit accounts, electronic chattelpaper, investment property, letter-of-credit rights, or electronic documents and the secured party has control under Section 7-106, 9-104, 9-105, 9-106, or 9-107 pursuant to the debtor's security

agreement.

63. It should also be noted that assignment law means a transfer of ownership that does not occur under Article 3.

64. Since Stevins' note is not a negotiable instrument, the transfer and sale of her note is subject to the provisions of Article 9 rather than Article 3 of the UCC.

65. Section 2.01 of the standard PSA provides that the loan notes and the mortgages must be transferred by both indorsement and by contracts of assignment for valuable consideration. The standard parties are the Seller, the Sponsor, the Depositor and the Trust. The Seller assigns all rights to the Sponsor and the Sponsor in turn executes a similar sale to the Depositor and the Depositor in turn assigns all rights to the Trustee. The typical language provides that each party transfers "all right, title and interest in and to the mortgages and mortgage notes" to the transferee. However, in addition to the law of assignments, Section 2.01 of the standard PSA incorporates the "hybrid Article 3" otherwise agreed provisions allowed by 1-302 of the UCC by requiring that the "original mortgage notes" must also be transferred and delivered and indorsed by all of these parties—the Seller, the Sponsor and the Depositor. The standard language provides that the "original note should have all intervening indorsements from the Originator to all of the intervening parties showing a complete and unbroken chain of indorsements from the Originator with the final indorsement from the Depositor to the Trustee for the trust."

66. Stevins asserts that US BANK has not paid good and valuable consideration for the note in this case and further alleges that the original note does not have ALL intervening indorsements from the Originator (in this case Mortgage Lenders Network) to LaSalle Bank to Bank of America, Marrill Lynch ending with US Bank.

67. Stevins likewise asserts that US Bank does not have standing in this matter and it cannot HOLD

the note and seek to enforce its terms because it gave no value to possess the note which is necessary for an assignment to convey ownership rights to enforce.

68. Returning to the Second Foreclosure opened in State court, it remained active from August 3, 2018, until a suggestion of Bankruptcy was filed on September 25, 2018.

69. The Second Foreclosure remained open in the State court until the trial judge entered an order on July 10, 2019, placing the State Court foreclosure action into an inactive/stay status. (A copy of the State Court Order placing the litigation in "inactive" status is attached and incorporated into this case as Exhibit L.)

70. Defendant Albertelli filed a motion in Stevins' bankruptcy case seeking to remove the stay and had it granted by the bankruptcy court in April 2020.

71. In November 2021, Stevins retained MFI-Miami to independently validate her obligation on the mortgage at issue in the instant case and to conduct a complete exam, audit, review and accounting of the mortgage loan, from its inception through December 20, 2021.

72. MFI-Miami was also hired by Stevins to determine if she had been the victim of predatory lending, fraud, and/or other deceptive practices and to formally dispute the validity of the mortgage.

73. On December 20, 2021, MFI-Miami sent Defendant, Mr. Cooper, a 3-page letter, often referred to as a Qualified Written Request, to obtain the documents required to conduct a complete review of the mortgage file. (A true and correct copy of the letter and supporting paperwork showing receipt by Mr. Cooper is attached as Exhibit M).

74. On behalf of Stevins, MFI-Miami faxed, mailed and certified copies of Exhibit M to Defendant, Mr. Cooper.

75. Although Defendant, Mr. Cooper, acknowledged receiving the 3-page letter from MFI-Miami, it failed to provide the required documents pursuant RESPA within 30 days after receipt of the letter.

76. To date, Mr. Cooper still has not provided the documents responsive and is breaking RESPA.

77. The Second Foreclosure was not returned to active status until March 8, 2022. (See attached Exhibit N order returning the case to active status.)

78. Despite the information provided by Plaintiff, Defendants continue their attempts to collect upon the subject consumer debt.

79. Plaintiff has been unfairly and unnecessarily harassed by Defendant's actions.

80. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to being requested to pay monies not due and owing, being threatened with continued collection efforts and emotional distress.

### COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

81. Plaintiff repeats and realleges paragraphs 1 through 81 as though full set forth herein.

82. Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

83. Defendants are a "debt collector" as defined by §1692a(6) of the FDCPA, because they regularly use the mail and/or the telephone to collect, or attempt to collect, delinquent consumer accounts. Defendants Mr. Cooper and Albertelli identify themselves as a debt collectors, and are engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others.

84. If Defendant US Bank is deemed to be a non-holder of the Stevins note and mortgage then it, too, is a debt collector that is engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others.

85. The subject consumer debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

16

### a. Violations of FDCPA § 1692e

86. The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

87. In addition, this section enumerates specific violations, such as:

> "The false representation of – the character, amount, or legal status of any debt . . . ." 15 U.S.C. § 1692e(2);
>
> "The threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. §1692e(5);
>
> "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §1692e(10); and
>
> "The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action." 15 U.S.C. §1692e(11).

88. Defendants violated 15 U.S.C. §§ 1692e, e(2), e(5), and e(10) and e(11) by employing deceptive means to collect or attempt to collect upon the subject consumer debt. It was deceptive for Defendant to allude that it would initiate a lawsuit against Plaintiff after entering a settlement with Plaintiff over the same debt. Defendants have collectively issued false and inconsistent statements by Mail and in other court actions with the goal of extracting payment from Plaintiff. Moreover, it was deceptive for Defendants to continue attempting to collect discharged and settled debts from a consumer.

### b. Violations of FDCPA § 1692f

89. The FDCPA, pursuant to 15 U.S.C. §1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

90. Defendants further violated §1692f when they unfairly and unconscionably attempted to collect on a debt by concealing the actual amounts of monies owed. By constantly changing dates, figures, and

17

amounts owed, Defendants hid the football by concealing the correct amount, if any, that may be owed and continues to take a fast and loose win at any cost approach by  attempting to collect on an alleged debt which should be readily ascertainable, identifiable and fixed.

91. Defendants have fraudulently claimed that they paid property taxes on Stevin's property for amounts that were paid in full by Stevins. (See receipts for property taxes paid in 2020 and 2021 for the subject property attached hereto as Exhibit O.)

92. Defendants have sought to have Stevins pay hidden attorney's fees packed into collection letters where no legal action or legal right existed to obtain these amounts.

93. Defendants have placed thousands of dollars of force placed hazard insurance onto Plaintiff's statements when the property at issue has, at all times, been insured by an HOA insurance policy that covers the building.

94. Defendants are seeking to collect compounded interest on all of these fraudulently claimed amounts with full knowledge that they are not entitled to collect these monies from Stevins.

95. As pled above, in paragraphs 11 through 85, Plaintiff has been harmed and suffered damages as a result of Defendant's illegal actions.

WHEREFORE, Plaintiff, SAMANTHA STEVINS, respectfully requests that this HonorableCourt enter judgment in her favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b.  Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

c.  Awarding Plaintiff actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. §1692k(a)(1);

d.  Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3);

e.  Enjoining Defendant from further contacting Plaintiff seeking payment of the subject

consumer debt; and

     f.  Awarding any other relief as this Honorable Court deems just and appropriate.

<u>**COUNT II – VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT**</u>

96. Plaintiff restates and realleges paragraphs 1 through 85 as though fully set forth herein.

97. Plaintiff is a "consumer" as defined by Florida Statutes §559.55(8).

98. Defendant is a "debt collector" as defined by Florida Statutes §559.55(7).

99. The subject consumer debt is a "consumer debt" as defined under Florida Statute § 559.55(6).

     **a.  Violations of FCCPA § 559.72(10)**

100.  A person violates § 559.72(9) of the FCCPA when it "Claim(s), attempt(s), or threaten(s) to enforce a debt when such person knows that the debt is not legitimate or assert(s) the existence of some other legal right when such person knows that the right does not exist."

101.  Defendants violated § 559.72(9) of the FCCPA when it falsely sought to collect amounts discharged by previous settlement agreement; claimed entitlement to attorney's fees not awarded; demanded to be reimbursed for property taxes they did not pay; knowingly placed force placed hazard insurance on fully insured property; placed compounded interest onto amounts not owed; continually changed, adjusted and shifted amounts claimed due and owing on a Note and Mortgage willull knowledge that their collection statements and documents were intentionally deceptive and confusing due to the amount of money being sought changing from month to month, statement to statement and document to document in order to do whatever it takes to collect from Plaintiff.

WHEREFORE, Plaintiff, SAMANTHA STEVINS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

     a.  Enter judgment in Plaintiff's favor and against Defendant;

     b.  Award Plaintiff her actual damages in an amount to be determined at trial pursuant to the Florida Consumer Collection Practices Act, Fla. Stat. §559.77;

c.   Award Plaintiff statutory damages of $1,000.00 pursuant to the Florida Consumer Collection Practices Act, Fla. Stat. §559.77;

d.   Award Plaintiff and equitable relief, including enjoining Defendant from further violations, pursuant to Florida Consumer Collection Practices Act, Fla. Stat. §559.77(2);

e.   Award Plaintiff costs and reasonable attorneys' fees pursuant to the Florida Consumer Collection Practices Act, Fla. Stat. §559.77;

f.   Enjoining Defendant from further contacting Plaintiff seeking payment of the subject consumer debt; and

g.   Award any other relief this Honorable Court deems equitable and just.

## COUNT III – VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA) 12. U.S.C.S. § 2605

102.  This action is brought by the Plaintiff, SAMANTHA STEVINS, against the mortgage company that serviced the mortgage on her home: Mr. Cooper.

103.  Defendant, NATIONSTAR MORTGAGE, LLC d/b/a/ Mr. Cooper is a debt collector pursuant to both the FDCPA and FCCPA and a company organized under the laws of the State of Texas. Defendant's principal place of business is located at 8950 Cypress Wates Blvd, Dallas, Texas 75019.

104.  Jurisdiction over this matter is conferred upon this Court by 12 U.S.C.A. §2615, 15 U.S.C.A. §1692 and 28 U.S.C.A. § 1331.

105.  Venue lies in this judicial district in that the events which gave rise to this claim occurred here and the property which is the subject of the mortgage loan at issue in this case is situated within this district.

106.  The allegations contained in paragraphs 71 through 76 above are realleged and incorporated herein by reference.

107.  On December 20, 2021, Stevins, through MFI-Miami, sent Mr. Cooper a "qualified written

request" as that term is defined under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C.S. §2605(e)(1)(B), formally disputing the amounts due and owing under the mortgage loan and thereby putting Mr. Cooper on notice that its accounting of the Loan was in error. She also detailed the items of information and documents needed that would support her ability to review any amounts that Mr. Cooper claimed Stevins owed.

108. Mr. Cooper violated RESPA, 12 U.S.C. §2605(e)(2)(C), by failing to provide Stevins with the information and documentation requested, or an explanation why the information sought was unavailable, no later than 30 days after receipt of Stevins' qualified written request (even though Mr. Cooper received 60 days to respond).

109. As a result of Mr. Cooper's violation of RESPA, Stevins is unable to defend the Second Foreclosure case and continues to incur actual damages, including, but not limited to:

    a. Being required to pay mortgage amounts discharged by Defendants in previous foreclosure litigation due to settlement;

    b. Being required to pay fraudulent and unawarded attorney's fees from previously-settled litigation;

    c. Being charged with Defendant's unapproved previously-litigated court costs from a settled state court foreclosure case that have been wrongfully placed onto her mortgage account;

    d. Being required to reimburse Mr. Cooper for fraudulently placed force placed hazard insurance on already-insured property;

    e. Having payments Stevins made to the bankruptcy trustee that were paid to Mr. Cooper be outright ignored by the servicer as if they were not received;

    f. Being dunned with compounded interest on inflated amounts not due and owing;

    g. Being fraudulently demanded to pay Mr. Cooper for property taxes she personally paid

directly to the county or lose ownership of her residential property in foreclosure.

h.   Having to pay, out of pocket, experts to examine mortgage documents, potential frauds committed on the mortgage and forensic accounting; and

i.   Any additional damages discovered during the pendency of litigation related to this issue.

WHEREFORE, Plaintiff, SAMANTHA STEVINS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a.   Assume jurisdiction over this action;

b.   Declare that Defendant, Mr. Cooper, violated RESPA, and award the Plaintiff actual damages and statutory damages pursuant to 12 U.S.C.A. §2506(f);

c.   Award Plaintiff reasonable attorney's fees and litigation expenses, plus costs of suit, pursuant to 12 U.S.C.A. §2605(f); and

d.   Grant such other or further relief as is appropriate.

## <u>COUNT IV – QUIET TITLE</u>

110. This action is brought by the Plaintiff, Samantha Stevins, against the presumptive owner and holder of a mortgage encumbering her real property: U.S. Bank, National Association.

111. Pursuant to a previous general release by a settlement agreement entered between the parties in a foreclosure action that occurred in Florida state court, the note evidencing the mortgage loan is no longer enforceable. Consequently, there are no monies owed under the mortgage loan. And so, the mortgage does not secure anything, thus warranting the quieting of title.

112. This Court has jurisdiction over this matter pursuant to 28 U.S.C. A. § 1332, because there is complete diversity or jurisdiction between the parties and the amount in controversy exceeds $75,000.00.  The amount secured by the mortgage, *i.e.,*, the loan amount appearing on the promissory note, is $185,000.00.

113. Venue is proper in this Court pursuant to 28 U.S.C.A. §1391 because a substantial part of the

acts, events and/or omissions giving rise to this action took place in this District. Plaintiff resides in Collier County, Florida and the mortgage encumbering that property was recorded in Collier County, Florida.

114. The Plaintiff is a natural person who resides at 1862 Morning Sun Lane, Naples, Florida 34119.

115. The Defendant, U.S. Bank National Association, As Trustee, Successor In Interest to Bank of America, National Association, As Trustee, Successor By Merger to LaSalle Bank National Association, as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-MLN1 ("US Bank") is a National Banking Association chartered by the Comptroller of the Currency of the U.S. Treasury, with its principal place of business in Minnesota.

116. At the time of the events set forth herein, US Bank was the presumptive owner and holder of the note and mortgage encumbering Plaintiff Stevins' property.

117. This is an action to quiet title to real property owned by plaintiff in fee simple located at 1862 Morning Sun Lane, Naples Florida 34119 (the "Property").

118. US Bank claims a lien against the property adverse to plaintiff.

119. US Bank's claim is without any right whatsoever, and US Bank has no estate, right, title, lien, or interest whatever in or to the Property or any part of the Property.

120. US Bank's claim is based on a Mortgage dated June 1, 2006, naming Plaintiff as borrower and Mortgage Lender's Network USA, Inc as original Lender, recorded on June 9, 2006 in the Official Records of Collier County, Florida as Instrument #3853046. ("The "Mortgage"). The Mortgage identifies as the instrument secured by it a promissory note in the amount of $185,000.00 dated June 1, 2006, and signed by Samantha Stevins (the "Note").

121. US Bank was assigned the Mortgage by: (i) Assignment of Mortgage with an unknown

transfer date sometime before July 16, 2009 that is notarized in Ventura, California on January 19, 2012, recorded on March 13, 2012, in the Official Records of Collier County as Instrument #4668013.

122. The Mortgage and Note are unenforceable because on November 21, 2014, in litigation in Collier County, Florida, the parties entered into a Confidential Settlement agreement that settled all issues regarding the foreclosure of the property pursued by US Bank in Case 2009 CA 6299 that stated "This Stipulation is meant to be absolute." And further "fully release(ed) all claims, disputes and differences related to the dispute."   The Absolute stipulation between the parties permitted US Bank to inform Nationstar LLC, to the client for whom it services the Mortgage, to its accounting, tax and legal advisors, to its corporate parents, to any state or federal regulatory agency, and to any rating agency of the "absolute stipulation" which clearly and unequivocally stated that the agreement, "shall be effective as a full and final accord and satisfaction and release of each matter in connection with those matters set forth herein above."  Both Stevins and US Bank agreed that the settlement agreement could not be modified "except by an instrument in writing signed by the party against whom such modification is sought to be enforced" and it further required that the settlement "shall inure to the benefit of and be binding upon all parties hereto and their respective successors and assigns," before stating that the agreement was "fully negotiated and reviewed by the parties."

123. There being nothing owed to US Bank per the absolute stipulation that fully released all claims, disputes and differences related to the mortgage and note attached to Plaintiff Stevins' property, the Mortgage can no longer be foreclosed and it constitutes a cloud on Plaintiff's title to the Property.

WHEREFORE, Plaintiff, SAMANTHA STEVINS demands judgment against Defendants DECLARING the Mortgage null and void; CANCELLING the mortgage of record; QUIETING

TITLE to the Property in Plaintiffs and against Defendants and any other persons claiming under Defendants; granting attorney's fees and costs of this action, and any other relief this court may deem proper

Dated: March 10, 2022                    Respectfully Submitted,

/s/ Samantha Stevins
Samantha Stevins, Esq.
Florida Bar No. 456810
2681 Airport Rd. South
Suite C-104
Naples, Florida 34112
Telephone: (239) 300-4417
stevinslawfirm@gmail.com
*Counsel for Plaintiff*